**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ALFRED GOMEZ-MESQUITA,**

        **Plaintiff,**          **CASE NUMBER: 06-12844
HONORABLE VICTORIA A. ROBERTS**

v.

**CITY OF DETROIT,**

        **Defendant.**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendant City of Detroit's Motion to Dismiss. The Court **DENIES** the motion.

**II.    BACKGROUND**

The City of Detroit Police Department ("DPD") employed Alfred Gomez-Mesquita ("Plaintiff) for over fifty years. In 1954, Plaintiff entered the DPD as a police cadet and received numerous promotions over the course of his career. In 1987, DPD promoted Plaintiff to the rank of Commander and he served in that position until the early 1990's when he was demoted to lieutenant for a short period. In 1994, DPD reinstated him as a Commander and he worked in that capacity until 2005. Then, on March 11, 2005, Assistant Walter J. Martin and Deputy Chief Gary Christian presented Plaintiff with a letter from Police Chief Ella Bully-Cummings. The letter stated:

> As of today, you are relieved of your appointment as Commander in the Detroit Police Department. Of course, you may elect to revert to the highest

1

rank held prior to any appointed position, that being the rank of lieutenant.
I wish you success in your future endeavors.

Plaintiff says Deputy Chief Christian gave him one hour to decide whether to retire or accept a demotion to lieutenant. During that brief period, Plaintiff was unable to consult the pension board about his retirement benefits, so he chose the demotion option. Plaintiff was 68 years old and the longest serving Commander in the DPD at the time.

During his tenure as Commander, the Detroit Police Command Officers Association ("DPCOA") represented Plaintiff. The DPCOA filed a grievance on Plaintiff's behalf. The DPCOA alleged that the City of Detroit ("Defendant") violated the collective bargaining agreement by demoting Plaintiff without just cause, prior notice, an opportunity to be heard, or any bargaining on the adverse employment action. In short, the DPCOA claimed that the Defendant unilaterally changed the terms and conditions of Plaintiff's employment. The DPCOA cited several specific articles of the collective bargaining agreement in support of the grievance. The grievance did not allege discrimination.

On December 16, 2005, an arbitrator denied Plaintiff's grievance and found that Defendant did not violate the collective bargaining agreement by demoting Plaintiff. The arbitrator found, among other things,[1] that the Chief of Police has the authority to remove a Commander from rank without cause in a non-disciplinary removal. Def. Ex. 7 at 47.

---

[1] The arbitrator's decision also hinged on Plaintiff's performance as well as DPD's organizational efforts to comply with Court Ordered Consent Decrees.

2

Plaintiff filed suit against Defendant under the Age Discrimination Employment Act ("ADEA"), Title VII, and the Elliott-Larsen Civil Rights Act. Plaintiff's Complaint alleges that he was demoted from rank of Commander to Lieutenant based on his age and Hispanic National Origin. Defendant moves for dismissal under FED. R. CIV. P. 12(b)(6).

## III.  STANDARD OF REVIEW

Defendant seeks dismissal pursuant to FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is a defense raised when the plaintiff fails to state a claim for which relief can be granted within the pleadings. FED. R. CIV. P. 12(b)(6). The Rule requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff's allegations plausibly establish a case which would entitle the plaintiff to relief. *Bell Atlantic corp. v. Twombly*, 127 S.Ct. 1955, 1968-70 (2007); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "[T]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Rule 12(b) also states that if the motion to dismiss under paragraph (6) "contains matters outside the pleadings, . . . the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence

in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). Once the moving party meets its burden, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. When the nonmoving party fails to make this showing and the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Because Defendant presents matters outside the pleadings, the Court will apply the summary judgment standard.

## IV.  APPLICABLE LAW AND ANALYSIS

Defendant seeks dismissal of Plaintiff's Complaint two grounds. First, it argues that Plaintiff is not entitled to relief under the ADEA because he is not an "employee" within the meaning of the Act. Second, Defendant contends that Plaintiff is collaterally

4

estopped from relitigating claims decided by the arbitrator. Plaintiff maintains that his claims are covered by ADEA and the doctrine of collateral estoppel is inapplicable.

### A. ADEA

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; [and] to prohibit arbitrary age discrimination in employment . . .." 29 U.S.C. § 621(b).

The ADEA covers any "individual employed by any employer," except "persons elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 29 U.S.C. § 630(f). Under section 630(b)(2) a State or political subdivision of the State are considered "employers."

In *Gregory v. Ashcroft*, the Supreme Court noted that where it is ambiguous whether an employee falls within one of the exceptions, the ADEA states plainly and unequivocally that the employee is included. 501 U.S. 452, 467. Because the "policymaking" exception is identical to the exception in Title VII, 42 U.S.C. § 2000(e)(f), courts interpret the exception consistently with its Title VII counterparts. *See Montgomery v. Brookshire*, 34 F.3d 291, 294 (5th Cir. 1994); *Birch v. Cuyahoga County Probate Court*, 393 F.3d 151, 161 (6th Cir. 2004)(noting that Courts use the same

nonexhaustive list of factors to evaluate the "policymaking exception" under the Equal Pay Act and Title VII).

In considering whether an employee's position is subject to the policymaking exception to Title VII or the ADEA definition of an employee, Courts consider a number of factors, including: (1) whether the appointee serves at the pleasure of the appointing authority, or, put another way, whether the elected official has plenary powers of appointment and removal; (2) whether the appointee has discretionary rather than administrative powers; (3) whether the appointee formulates policy; (4) whether the appointee represents the policymaker or can speak on behalf of the policymaker; and (5) the level of position within the organization's chain of command. *See E.E.O.C. v. Board of Trustees of Wayne County Cmty Coll.*, 723 F.2d 508, 511 (6th Cir. 1983); *Birch v. Cuyahoga County Probate Court*, 393 F.3d 151, 161 (6th Cir. 2004); *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996).

Plaintiff argues he is not subject to the policymaking exception for several reasons. First, he notes that Commanders are not appointed to policymaking positions. Second, the organizational structure of the DPD places Commanders after Assistant Police and Deputy Chiefs. Third, at the time of his demotion, Plaintiff says that DPD had approximately 20 Commanders. Fourth, the Detroit City Charter expressly grants policymaking authority to the Board of Police Commissioners. The Charter states in pertinent part: "the board shall . . . [i]n consultation with the chief of police, and with the approval of the mayor, establish policies, rules, and regulations" for the police department. Fifth, Plaintiff never formulated any policies. Rather, he carried out the policies set by the DPD. In support of his position, Plaintiff cites *Gomez v. City of Eagle*

6

*Pass*, 91 F.Supp.2d 1000 (W.D.Tex 2000) and *Montgomery v. Brookshire*, 34 F.3d 291 (5th Cir. 1994).

In *Gomez*, the Court found that a city manager was not a "policymaker" under Title VII. *Gomez v. City of Eagle Pass*, 91 F.Supp.2d at 1005. Although the city manager had the authority to hire and fire, the Court determined that her responsibilities were administrative and that her specific duties were to carry out and administer policies developed independently by the city council. *Id.* Similarly, in *Montgomery*, the Fifth Circuit found that the "personal staff" exception to the ADEA did not apply to a deputy sheriff who occupied the lowest rank on the chain of command and exercised no supervisory authority over any officers in the sheriff's department. *Montgomery*, 34 F.2d at 296.

Here, Plaintiff is a Commander with DPD and served at the pleasure of the Chief of Police. The evidence presented demonstrates that his role with the DPD was to supervise police officers and implement department policies – not to make policy – the job of the Board of Police Commissioners.

Defendant's argument that Plaintiff is a policymaker relies primarily on the testimony of Police Chief Cummings during a pending case regarding the collective bargaining status of DPD Commanders. Although during those proceedings Cummings states that Commanders "play a significant role in policymaking" and they have the ability to "effectuate" and recommend changes to department policy, the Court finds this testimony insufficient to hold as a matter of law that Plaintiff exercised policymaking authority. Neither Cummings' testimony nor the testimony of other DPD staff indicates that the Commanders have a policymaking role in the DPD. Defendant also relies on a

7

1996 Michigan Employment Relations Commission ("MERC") opinion stating that Commanders have "substantial discretion in formulating, determining, and effectuating management policy, that the type of decisions they make are executive in nature." Def. Ex. 6. The issue before MERC , however, was whether Commanders, as executives, are exempt from collective bargaining. As of the date of the arbitrator's decisions, this issue remained undecided. Therefore, the Court finds the MERC opinion irrelevant and unpersuasive to its determination.

Congress intended the ADEA exemptions to be narrowly construed. *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985). Defendant does not point to or even allege any policies promulgated by Plaintiff. Moreover, Defendant fails to rebut Plaintiff's evidence that the Board of Police Commissioners, along with the Police Chief and Mayor, are the policymaking authority. On the other hand, Plaintiff presents sufficient evidence to establish that genuine issues of material fact remain as to whether the "policymaking" exemption applies. The Court finds summary judgment is inappropriate.

### B. Collateral Estoppel

Because Plaintiff submitted his grievance to an arbitrator, Defendant claims that he is precluded from arguing the same issues in this Court under the doctrine of collateral estoppel. Defendant makes several arguments regarding the enforceability of arbitration awards and their final and binding effect on subsequent ADEA claims. The Court, however, finds Defendant's arguments meritless.

It is undisputed that the DPCOA on behalf of Plaintiff filed a grievance with the arbitrator regarding his demotion. That grievance argued that Plaintiff's demotion

violated the parties' collective bargaining agreement. Plaintiff did not argue in the grievance or before the arbitrator that he was demoted based on age or national origin.

The doctrine of collateral estoppel precludes a party from relitigating the same issues if the party was afforded the opportunity to fully litigate the issue in prior proceedings resulting in a final judgment. *See United States v. Dominquez*, 359 F.3d 839 (6th Cir. 2004). Since Plaintiff never raised the issues presented here to the arbitrator, it follows that the doctrine of collateral estoppel is inapplicable.

Further, in the context of employment discrimination claims, the Supreme Court held that the exercise of an arbitration provision in a collective bargaining agreement does not preclude an employee from subsequently pursuing a Title VII claim. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). In *Alexander*, an union employee filed suit under Title VII after exercising a complusory arbitration provision contained in a collective bargaining agreement. *Alexander*, 415 U.S. at 50-52. The Court concluded that the employee could vindicate contractual rights against discrimination at arbitration and could enforce independent statutory rights through litigation. *Id.*

Almost twenty years later, the Court in *Gilmer* further explained that subsequent litigation was not precluded in *Alexander* because the claimants did not agree to arbitrate their statutory claims and were represented by their unions in the arbitration proceedings. *Gilmer*, 500 U.S. at 35. While some courts question the continuing viability of *Alexander*, it remains good law in the Sixth Circuit. *See, e.g. Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997)(holding that "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right

9

to obtain a judicial determination of his rights under a statute such as the ADA."); *but see Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996)(holding that a binding arbitration clause in a collective bargaining agreement barred an employee from pursuing claims under Title VII and the Americans with Disabilities Act in a judicial forum). *Alexander* and its progeny make clear that Plaintiff did not forego his right to file suit by participating in the arbitration. More important, unlike the claimant in *Alexander,* Plaintiff did not litigate his discrimination claims before the arbitrator.

Nevertheless, Defendant argues that because Plaintiff contested his demotion in the arbitration proceeding and does so here, albeit under a different cause of action, the issue was litigated. Defendant notes that in deciding whether the Defendant breached the collective bargaining agreement in demoting Plaintiff the arbitrator also found that Plaintiff's demotion was based on poor performance. Defendant argues that this would also serve as a legitimate non-discriminatory reason for the demotion in evaluating Plaintiff's ADEA claim. While this may be true, it does not negate the fact that the arbitrator did not review the substantive merits of Plaintiff's claims under the ADEA, Title VII, or the Elliot Larsen Civil Rights Act. Instead, he only determined that Plaintiff's demotion did not violate the collective bargaining agreement.

The Supreme Court noted in *Alexander* that an arbitrator only has the authority to resolve questions of contractual rights "regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights" secured by the ADEA. *Alexander*, 415 U.S. at 54. The Court finds that applying collateral estoppel to Plaintiff's statutory discrimination claims is inappropriate.

## V. CONCLUSION

For the reasons stated, Defendant's motion is denied.

**IT IS ORDERED**.

_____

 /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 2, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 2, 2007.

s/Linda Vertriest
Deputy Clerk